IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**PAUL L. NICHOLAS, SHAUNET S.**
**NICHOLAS and PAUL L. and**
**SHAUNET S. NICHOLAS, as Parents**
**and Next Friends of Erin Michelle**
**Nicholas, an infant under the**
**age of eighteen years,**

        **Plaintiffs,**

**v.**                             **CIVIL ACTION NO. 1:03CV276**
                                         **(Judge Keeley)**

**BITUMINOUS CASUALTY CORPORATION,**

        **Defendant.**

**ORDER MEMORIALIZING RULINGS MADE BY THE COURT**
**AT THE OCTOBER 5, 2006 MOTION HEARING**

On October 5, 2006, the Court held a hearing by telephone to address Defendant Bituminous Casualty Corporation's ("Bituminous") "Motion for Summary Judgment Based On Plaintiffs' Fraudulent Reports of Injuries and Limitations As a Result Of the Accident in November 2001" and "Motion to Dismiss Specified Allegations in Plaintiffs' Amended Complaint or, In the Alternative, To Grant Partial Summary Judgment As to Each." After hearing oral argument on the issues involved, the Court made the following rulings.

**A. Motion for Summary Judgment Based On Plaintiffs' Fraudulent Reports of Injuries and Limitations As a Result Of the Accident in November, 2001**

Bituminous requested that the Court grant summary judgment in its favor because the Plaintiffs Paul and Shaunet Nicholas (the

"Nicholases") had been recorded in engaging in many of the activities that they allege they can no longer perform as a result of the November 2001 automobile accident. Bituminous asserted that their actions equated to fraud upon the court and that dismissal of their bad faith claims is the appropriate sanction for such fraudulent conduct in this case.

The parties' pleadings, however, established genuine issues of material fact concerning whether the Nicholases have fraudulently misrepresented the extent of their injuries arising out of the November, 2001 accident to Bituminous, and whether they have undertaken actions to hinder Bituminous' ability to reasonably investigate their physical injuries and the medical cause for those injuries. Therefore, the Court denied Bituminous' motion (dkt no. 340) because it is the role of the jury to weigh the evidence and make factual and credibility determinations in this case.

**B. Motion to Dismiss Specified Allegations in Plaintiffs' Amended Complaint or, In the Alternative, To Grant Partial Summary Judgment As to Each.**

Bituminous' motion for partial summary judgment on specific allegations in the Amended Complaint raised two primary issues: (1) whether Bituminous could be held liable under the West Virginia Unfair Trade Practices Act ("UPTA") for the actions of Bastien &

Lacy; and (2) whether the Nicholases waived/released all claims against Bituminous except for their third party bad faith claims.

1.

A defense attorney who is employed by an insurance company to represent an insured in a liability matter is not engaged in the business of insurance; thus, he is not directly subject to the provisions of the UTPA. Syl.Pt. 3, Barefield v. DPIC Companies, 600 S.E.2d 256 (W.Va. 2004). Furthermore, an insurer is not liable to a third party for the conduct of an attorney hired by the insurer to represent its insureds when the defense attorney's strategy and tactics are a result of the attorney's independent, professional discretion with regard to the representation of the client-insured, and are not otherwise relied upon or ratified by the insurance company in a manner contrary to the Act. Syl.Pt. 10, Barefield v. DPIC Companies, 600 S.E.2d 256 (W.Va. 2004). However, "a claimant can establish a violation of the UTPA by showing that an insurance company, through its *own actions*, breached its duties under the Act by knowingly encouraging, directing, participating in, relying upon, or ratifying wrongful litigation conduct of a defense attorney hired by the insurance company to represent an insured." Syl.Pt. 4, Barefield v. DPIC Companies, 600 S.E.2d 256 (W.Va. 2004)(emphasis added).

### ORDER MEMORIALIZING RULINGS MADE BY THE COURT
### AT THE OCTOBER 5, 2006 MOTION HEARING

West Virginia case law makes clear that the focus is on the actions of the insurer with respect to the litigation rather than the actions of the attorney hired to represented the insured. With respect to Paragraph Nos. 61, 62, 63, 64, 70, and 71 of the Amended Complaint, the Court concluded that the Nicholases had failed to produce any evidence from which a jury could infer independent actions taken by Bituminous that were violative of the UTPA rather than the actions of Bastien & Lacy that are not covered by the Act. However, in viewing the evidence in the light most favorable to the nonmoving party, the Court concluded that the Nicholases had produced sufficient evidence at the summary judgment stage to create a genuine issue of material fact as to whether Bituminous directed or ratified wrongful litigation conduct on the part of Bastien & Lacy in a manner contrary to the provisions of the UTPA and its supporting regulations as alleged in Paragraph No. 97 (a) through (ff) of the Amended Complaint. Therefore, the Court granted judgment in favor of Bituminous with respect to Allegation Nos. 61, 62, 63, 64, 70, 71, but denied Bituminous' motion with respect to Paragraph No. 97(a) through (ff) of the Amended Complaint.

2.

For the first time, in their Amended Complaint the Nicholases asserted coverage issues and first party bad faith claims arising

4

**ORDER MEMORIALIZING RULINGS MADE BY THE COURT
AT THE OCTOBER 5, 2006 MOTION HEARING**

from the commercial general liability ("CGL") policy issued by Bituminous to Northeastern Energy Consulting, Inc. ("Northeastern"). Relying primarily on the settlement entered into by the Nicholases with its insureds, Bituminous asserted that the Nicholases had waived or released all claims relating to either liability coverage or medical payments under Northeastern's CGL policy. In response, the Nicholases argued that the claims they settled were against the insureds and not Bituminous.

On January 25, 2005, the Nicholases executed a "Settlement Agreement For the Release of All Claims" in which Bituminous was named as a "Releasee." As part of the settlement, the Nicholases accepted a monetary amount that was well within the limit of liability of the business auto policy. Therefore, any claim by the Nicholases with respect to the liability coverage under Northeastern's CGL is moot.

Furthermore, the unambiguous language of the Settlement Agreement provided a release of all claims except for those specifically preserved by the Nicholases in the Agreement. Specifically, on pages two and three of the Settlement Agreement, the Nicholases released all claims against Andrew Iezzi ("Iezzi"), Northeastern, and Bituminous, in its capacity as the insurer of Iezzi and Northeastern, including "any matter of other allegation

expressly or impliedly contained in the Plaintiff's Complaint . . ." and "any and all claims for loss, liability, damages, suits or causes of action of any kind or nature whatsoever, including, but not limited to, tortious, contractual, statutory, fraudulent, punitive, interest, claims for attorney's fees, or mixed claims of any kind, nature of character whatsoever" which the Nicholases had at that time, had in the past, or may have in the future. As expressly stated on page six of the Settlement Agreement, the Nicholases preserved only the claims set forth in Count IV of their original complaint.

Northeastern's CGL policy was never mentioned in the Nicholases original complaint and Count IV generally asserted third party bad faith claims under the UTPA. Although the Nicholases' argued at the hearing that Bituminous was on notice that his clients intended to pursue a first party bad claim arising from the medical payment coverage of the CGL policy, the Court concluded that the Settlement Agreement of the parties unambiguously released all claims without any express reservation of the Nicholases' alleged claims arising under the CGL policy against Bituminous.[1]

---

[1] Bituminous primarily couched its argument concerning Nicholases' release of their claims under the CGL policy in terms of a waiver. To effect a waiver, there must be evidence which demonstrates that a party has intentionally relinquished a known right. Potesta v. USF&G, 504 S.E.2d 135, 143 (W.Va. 1998). Counsel for the Nicholases received a copy of the CGL policy in February, 2003 and asserted claims under the liability as well as medical payment coverage in

Therefore, the Court granted partial summary judgment in favor of Bituminous with respect to Paragraph Nos. 42, 43, 44, 45, 46, 76, 77, 78, 79, 80, 81, 84, 85, 88, 89, 90, 91, 92, 93, 94, 95, 96, and 107 of the Amended Complaint.

## Conclusion

For the reasons stated above and on the record at the October 5, 2006 hearing, the Court **DENIED** the defendant's "Motion for Summary Judgment Based On Plaintiffs' Fraudulent Reports of Injuries and Limitations As a Result Of the Accident in November, 2001" (dkt no. 340) and **GRANTED-IN-PART and DENIED-IN-PART** the plaintiffs' "Motion to Dismiss Specified Allegations in Plaintiffs' Amended Complaint or, In the Alternative, To Grant Partial Summary Judgment As to Each." (dkt no. 338).

It is so **ORDERED**.

---

July, 2004. Therefore, in January, 2005, when they executed the release of all claims except for third party bad faith claims against Bituminous, the Nicholases intentionally relinquished by that Release a known right to any coverage or first party bad faith claims under the CGL policy.

### ORDER MEMORIALIZING RULINGS MADE BY THE COURT
### AT THE OCTOBER 5, 2006 MOTION HEARING

The Clerk is directed to transmit copies of this Order to counsel of record.

DATED: October 11, 2006.

                                          /s/ Irene M. Keeley
                                          IRENE M. KEELEY
                                          UNITED STATES DISTRICT JUDGE